[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On January 12, 1988 Plaintiff 24 Leggett Street Limited Partnership purchased certain premises located in East Hartford from Defendant Beacon Industries, Inc. Since approximately 1954 Beacon had used the premises to produce aircraft engine parts for private contractors. The premises was purchased pursuant to a Purchase and Sale Agreement (Plaintiff's Exhibit 1). Section 15(k) of said Agreement provides as follows:
"(k) Except as may be indicated in a certain Site Assessment Report for the Property, prepared by HRP Associates, Inc. and issued on July 8, 1987 (the "Site Assessment Report"), copy of which is attached hereto as Schedule G, no `Hazardous Waste' (as such term is defined in Connecticut General Statutes Section 22a-115 or 22a-448, as amended) and/or `Spill' (as such term is defined in Connecticut Public Act 85-443, Section 1, as amended) and/or `Hazardous Substance' (as such term is defined in the Comprehensive environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 6901 et seq. and CT Page 8303 in any applicable Connecticut Statutes and Regulations) and/or other environmental contamination now exists, or has ever had stored, on the Premises, or on the following (`Adjoining Property'): any real estate that, within the three (3) year period preceding Closing, either (i) has been included in the property description of the Premises, or (ii) has included the Premises in the property description of such real estate. Seller shall defend, indemnify and hold Purchaser harmless from and against any liabilities, losses, damages, costs or expenses (including reasonable attorneys' fees) of any nature arising from the environmental condition of or problem with the Property, which condition or problem arose prior to Closing and whether known by Purchaser (by virtue of the Site Assessment Report) or unknown. The indemnity set forth in this Subparagraph K shall survive the Closing for a period of five (5) years only and shall not merge in the Deed to be delivered by Seller. In the event a final judgment is rendered with respect to an action brought with respect to this Subparagraph (k) and it is determined that the environmental condition or problem arose subsequent to the Closing, Purchaser shall reimburse seller for all reasonable costs, including its reasonable attorneys' fees incurred as a result of said action." (At trial the Site Assessment Report was marked Exhibit 3.)
Section 15(1) of said agreement provides in pertinent part:
". . . Seller shall defend, indemnify and hold Purchaser harmless from and against any liabilities, losses, damages, costs or expenses (including reasonable attorneys' fees) of any nature arising from an oil spill from any and all of the oil tanks which are or have been on the Premises, and which oil spill occurred prior to the Closing. The indemnity set forth in this Subparagraph (1) shall survive the Closing for a period of five (5) years only and shall not merge in the Deed to be given by Seller."
By writ dated July 3, 1991 the Plaintiff has brought this action in four counts (counts 5, 6 and 7 having been abandoned).
In count 1 Plaintiff alleges fraudulent misrepresentation on the part of the defendant. It alleges that to induce the plaintiff to purchase the property defendant made false CT Page 8304 representations concerning environmental contamination that existed on the property, that defendant knew or should have known the representations to be false and that the representations were made with the intent of inducing the plaintiff to purchase the premises, which it did to its detriment. It alleges that but for the environmental representations, it would not have purchased the premises or would only have done so at a lower price.
In count 2 the Plaintiff alleges negligent misrepresentation on the part of the defendant in that environmental representations were made without any reasonable investigation into their truth.
In count 3 the Plaintiff alleges breach of warranty in that the defendant warranted that except for certain contamination listed in a site report (Ex. 3), no "hazardous waste," "spill," "hazardous substance," or other environmental contamination existed on the premises.
In count 4 the Plaintiff alleges breach of contract. It claims that defendant promised it would hold the plaintiff "harmless from and against any losses, damages, costs or expenses (including reasonable attorneys' fees) of any nature arising from the environmental condition of or problem with the property, which condition or problem arose prior to closing whether known by (Plaintiff) (by virtue of the Site assessment Report) or unknown.
A court trial was held for seven days in the a month of January, 1995. The court finds the following facts:
Prior to the purchase of the property by the plaintiff, a company known as Harper Surface Finishing Systems had shown interest in purchasing the property, and it had hired HRP Associates, Inc., art environmental consulting firm, to prepare a site assessment report. That report issued on July 8, 1987 contained an assessment of environmental contamination on the property. (Plaintiff Ex. 3). Harper Surface Finishing Systems did not purchase the property. However, when the plaintiff decided to purchase the property, the report was provided to it by the defendant.
The court does not believe that the plaintiff has proved its allegations in count 1. The defendant provided the site CT Page 8305 assessment report for the property (Ex. 3) to the plaintiff, and it provided the warranties set forth in the purchase and sale agreement. If the plaintiff had so desired, it could have arranged for another site assessment report to be prepared. Instead, both parties chose to rely on the HRP Report together with the warranties set forth in the Purchase and Sale Agreement. The court fails to see that there was any fraudulent misrepresentation on the part of the defendant.
Nor does the court believe that the plaintiff has proved its allegations of count 2. Here again the plaintiff (as well as the defendant) chose to rely on the HRP report together with the warranties set forth in the purchase and sale agreement. Plaintiff has failed to show negligence on the part of the defendant.
Nor does the court believe that the plaintiff has proved the allegations set forth in count 4. With the exception of the warranties set forth in the purchase and sale agreement, the defendant made no other promises which were proven by the plaintiff.
As stated above, Count 3 alleges breach of warranty. Thus, an interpretation of the warranties set forth in the Purchase and Sale Agreement as they apply to the facts proven becomes pertinent to the court's decision in this case.
In June or July of 1988 after the property was purchased HRP was asked to prepare another site assessment report for the plaintiff. The defendant by this time had stopped manufacturing at the site, over 155 drums which had contained unknown waste had been removed, and a 1000 gallon underground storage tank had been removed. HRP prepared a report which it submitted to the plaintiff in August of 1988. (Ex. 40) As a result of the findings and recommendations in that report HRP contracted with a drilling company to go to the site to install soil borings and monitoring wells. Soil samples were taken and examined, and water samples from five monitoring wells were taken. Although HRP found low levels of contamination in several areas, and a slight impact on the site's ground water, nothing was found that exceeded state action levels.
In September of 1988 HRP was contacted by Sal Milazzo on behalf of the plaintiff. Mr. Milazzo had observed a CT Page 8306 depression in a fenced-in area south of the plaintiff's building and after having had a test pit dug to determine what the cause was, he had found what he described as discolored soil and metal shavings. HRP went to the site, took soil samples and had them analyzed at the Connecticut Testing Laboratory. Test results received by HRP on October 11, 1988 showed P.M. xylenes present in the soil which exceeded state action level. HRP notified the plaintiff that approximately 1000 cubic yards of the contaminated soil would have to be removed from the site, and HRP obtained permission from the state to have the soil removed to an East Hartford land fill. Permission was received on November 14, 1988.
In the meantime on November 8th additional excavation had been done and more soil samples taken. Xylenes were present above the action level of the state and an unknown hydrocarbon mix was present.
On November 11th HRP again took additional soil samples. (Ex. 41) and sent them to the Connecticut Testing Laboratory. In addition HRP continued to excavate between November 11th and November 15th while waiting for the results of the November 11th tests. It continued to excavate during that interim because its staff could see and smell what they thought to be special waste and what they thought to be hydrocarbon present.
On November 15 the results of the tests sent to the laboratory on the 11th were received. These test results revealed no compounds that exceeded state action levels. However, as stated above, between November 11th and 15th HRP had continued to excavate approximately 370 cubic yards of additional material. The basis of that removal was the presence of metal shavings, hydrocarbon odor, and discolored soil. (Plaintiff's Ex. 17). The stained metal particles were deemed by HRP to be a special waste, and HRP was given permission from the East Hartford landfill to send the additional 370 cubic yards of material to the East Hartford landfill. Plaintiff's Exhibit 7 summarizes the remedial actions taken by HRP from late September 1988 through early December.
As of December 5, 1988 HRP was recommending no further excavation at the sites. Thus, as of December 1988 approximately 1,370 cubic yards of contaminated soil had been CT Page 8307 removed to the East Hartford land fill. This included the original 1000 cubic yards, plus the 370 cubic yards which had been excavated between November 11 and November 15, 1988.
In August, 1989 Mr. Milazzo again contacted HRP on behalf of the plaintiff. HRP at that time put in a series of 13 test pits located throughout the property and installed four additional ground water monitoring wells. Samples were sent to the Connecticut Testing Laboratory. HRP then prepared a report in November 1989 which was revised in a November 1990 report. The recommendations were that there were no contaminants which exceeded a known drinking water standard or a state action level. In Test Pit 1A, however, HRP concluded that there were metal shavings present and that Pit 3A indicated an odor. Without doing further testing it then made certain assumptions that if it did further testing between Test Pit 1A and other Test Pits which were known to be clean, that it could estimate that 275 cubic yards of soil would contain contamination that would have to be removed. Based on these assumptions, it estimated that the additional cost of cleanup would be $81,000.
In November 1991 HRP prepared another report based again on assumptions of what would have to be removed if further testing were done. In that report HRP estimated the cost of removal to be $299,950.
No further testing was done at the site until December 1994 less than one month before trial almost seven years after the closing, and after the five-year indemnity period had expired.
The court holds that the defendant cannot be held responsible for any contamination made on the assumptions and estimates of HRP in its November 1990 and 1991 reports. These assumptions and estimates based on limited data and without further testing were merely speculative.
The court further holds that the defendant cannot be held responsible for any contamination which was discovered in December 1994. The purchase and sale agreement specifically provides that the indemnity set forth therein shall survive the closing for a period of five years only. The court interprets this to mean that the seller can only be held responsible for contamination that was actually discovered
CT Page 8308 within the five-year period. While certain contamination was discovered within the five-year period, 1,370 cubic yards of that soil had been removed and the court finds that the defendant is liable for the costs of that removal. The amount of further contamination expected to be found (prior to the expiration of the five-year indemnity period) was based on assumptions, estimates, and speculation, and the plaintiff failed to prove what the amount of that contamination was. The amount of additional contamination actually discovered in December 1994 was discovered after the five-year indemnity period had expired.
The Court holds that the defendant can only be responsible for the costs of remediation performed prior to December 1988. The costs are as follows:
 HRP Associates, Inc. $ 711.99 HRP Associates, Inc. 4,724.38 Maintenance Enterprises 32,936.85 American Masons 270.90 American Masons 270.90 Estimate for Paving Area 4 7,088.00 -------- ($10,688 less $3,600 transcript 1-11-95, pg. 87
Total $46,003.02
The defendant has paid $38,139.07, leaving a balance due of $7,863.95.
Accordingly, judgment may enter for the plaintiff in the amount of $7,863.95, plus court costs.
Frances Allen State Judge Referee